IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW BARRERAS,

      Plaintiff,

vs.                                  No. CIV 06-1008 RB/LAM

MARK ROSSER, BRYAN HOLMES,
PETE HERNANDEZ, in their individual
capacities as well as their official capacities
as Officers of the Roswell Police Department,
CITY OF ROSWELL, a New Mexico Municipality,

      Defendants.

MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc.

30), filed on July 9, 2007.  Jurisdiction arises under 28 U.S.C. §§ 1331, 1343, and 1367.  Having

considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant the

motion.

I.     **Background.**

Plaintiff brought this 42 U.S.C. §1983 action for violation of his rights under the Fourth,

Fifth, Eighth and Fourteenth Amendments[1] against the individual defendants and the City of

Roswell (herein "City").  Plaintiff also asserts state-law claims for assault, battery, malicious abuse

---

[1] The Fifth Amendment protects against due process violations caused by the federal government.  *See Pub. Utils. Comm'n v. Polak*, 343 U.S. 451, 461 (1952); *Gomez v. N. Dakota Rural Dev. Corp.*, 704 F.2d 1056, 1058 (8th Cir. 1983).  The Eighth Amendment's prohibition against cruel and unusual punishment applies only to convicted inmates.  *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998).  The facts alleged in the Complaint implicate neither the Fifth Amendment, nor the Eighth Amendment.

of process, trespass, intentional infliction of emotional distress, and negligence against the individual

defendants and the City.  Plaintiff seeks compensatory damages, punitive damages, attorney fees,

costs, and interest.

Defendants move for summary judgment on all claims, asserting qualified immunity and

lack of municipal liability with respect to the constitutional claims.  Plaintiff's memorandum in

opposition to Defendants' motion for summary judgment cites no legal authority and addresses only

Defendants' arguments on qualified immunity.

## II.    Facts.

The following statement of facts is set forth in the light most favorable to Plaintiff, with all

reasonable inferences from the record drawn in his favor.  *See Fuerschbach v. Southwest Airlines

Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

Plaintiff lives at 1905 South Washington in Roswell, New Mexico with his wife, Michelle

Barreras, and their children. (Undisp. Facts ¶ 1.)  On October 24 and 25, 2004, Plaintiff was present

at the home, along with his wife, Michelle, his daughter, and his two adult sons, Andrew, Jr. and

Anthony. (Undisp. Facts ¶ 2.)  During the course of the evening of October 24, 2004, Plaintiff had

at least seven or eight beers. (Undisp. Facts ¶ 3.)  Around 11:30 p.m., an unknown individual ran

through the Barreras yard and, a short time later, two unknown men arrived in a truck and began

yelling.  (Undisp. Facts ¶ 4.)

Officer Harrell from the Roswell Police Department was dispatched to the Barreras home

around midnight to investigate the reported disturbance, with Defendant Officer Pete Hernandez as

back up. (Undisp. Facts ¶ 5.)  Michelle Barreras spoke with the officers about the disturbance.

(Undisp. Facts ¶ 6.)  Defendant Hernandez recognized Michelle Barreras from an incident in 2002,

where Michelle Barreras sought medical treatment in the emergency room after Plaintiff beat her

after he had been drinking.  (Def. Ex. 1, Michelle Barreras Dep. at 26.)

Plaintiff stayed in the garage while Michelle Barreras spoke with the police officers until his son told him that police officers were present at the house. (Undisp. Facts ¶ 7.) At that point, Plaintiff came out of the garage, stood about ten feet away from the officers, yelled at the police officers "to get the fuck off our property" or to "fucking leave." (Undisp. Facts ¶ 8.) Defendant Officer Hernandez heard Plaintiff yell and curse at the officers, and heard Plaintiff state that "he hates pigs" and "fuck the police." (Undisp. Facts ¶ 9.) Neither police officer had spoken with Plaintiff before he began to yell at them. (Undisp. Facts ¶ 10.) Michelle Barreras believed Plaintiff was drunk when he began yelling at the officers. (Undisp. Facts ¶ 11.)

Plaintiff's son came outside to where his father was yelling at the officers and took his father back into the garage. (Undisp. Facts ¶ 15.) Michelle Barreras apologized for her husband's conduct and, in response to the officers' inquiry, told the officers that she would be all right if they left. (Undisp. Facts ¶ 16.) The officers asked Michelle Barreras some additional questions about the individuals who had been in the Barreras yard. (Undisp. Facts ¶ 17.) The officers completed their questioning and left. (Undisp. Facts ¶ 18.) Some time after the officers left, Michelle Barreras took the children and left the house. (Undisp. Facts ¶ 19.)

Around 3:00 a.m., the Roswell Police Department received new calls reporting a domestic disturbance with a woman screaming for help at the Barreras home. (Undisp. Facts ¶ 20.) Defendant Officer Rosser was dispatched on the call, with Defendants Hernandez and Holmes as back up. (Undisp. Facts ¶ 20.) When Defendant Rosser arrived at the home, he saw that it appeared to be quiet without any visible sign of an altercation. (Undisp. Facts ¶ 21.) Defendant Rosser approached the home to verify that everything and everyone were alright inside the residence. (Undisp. Facts ¶ 21.)

Defendant Rosser went to the door and knocked.  (Undisp. Facts ¶ 22.)  When Plaintiff answered the door, Defendant Rosser identified himself as a police officer and told Plaintiff that there had been a report of domestic disturbance at the house.  (Undisp. Facts ¶ 23.)  Plaintiff opened the interior door, but left the exterior glass storm door closed and locked.  (Undisp. Facts ¶ 25.) Defendant Rosser asked Barreras to open the locked glass storm door and come outside so that he could check to see if everything was okay, but Barreras refused.  (Def. Ex. 2, Pl., 25-26; Def. Ex. 4, Rosser Aff. ¶ 12.)  Defendant Rosser asked Plaintiff to step outside, and Plaintiff responded by telling Defendant Rosser that Plaintiff was the only person in the house and nothing was going on. (Undisp. Facts ¶ 27.) Barreras continued to refuse to come outside, stating that Officer Rosser needed to "fucking leave."  (Pl. Dep. 26-27; Rosser Aff. ¶ 11.)  Barreras slammed the interior door closed.  (Rosser Aff. ¶ 13.)

Defendant Rosser knocked at the door a second time.  (Pl. Dep. 27; Rosser Aff. ¶ 14.) Plaintiff opened the interior door again, asked Defendant Rosser if Defendant Rosser was stupid, and told Defendant Rosser that Defendant Rosser needed to "fucking leave."  (Pl. Dep. 28; Rosser Aff. ¶ 15.)  Defendant Rosser told Plaintiff for the third time that he just wanted to make sure that everything was okay.  (Rosser Aff. ¶ 16.)

Defendant Rosser asked Plaintiff if anyone else was inside the residence, and he responded that it was none of the officer's business and slammed the door.  (Rosser Aff. ¶ 17).  Defendant Hernandez arrived at the house in time to hear Plaintiff cursing Defendant Rosser and to see Plaintiff slam the door shut on Defendant Rosser for the second time.  (Def. Ex. 3, Hernandez Aff. ¶ 17, 18; Rosser Aff. ¶ 18;).

After Defendant Hernandez arrived on the scene, Defendant Rosser briefed Defendant Hernandez on the situation and advised him that it was not clear whether anyone else was inside the

residence other then Plaintiff.  (Undisp. Facts ¶ 35.)  Defendant Holmes arrived while Defendant Rosser was briefing Defendant Hernandez.  (Undisp. Facts ¶ 36.)

After Barreras slammed the door on Officer Rosser for the second time, Barreras heard the phone ringing and answered the phone.  (Pl. Dep. 28.)  The caller identified himself as being with the Roswell Police Department, and asked Plaintiff to talk with the officers who were outside of the house.  (Undisp. Facts ¶ 38.)

Plaintiff noticed lights at the back of the house and stepped into the backyard.  (Undisp. Facts ¶ 40.)  Defendants Hernandez and Holmes stood outside of the fenced backyard, and asked Plaintiff to come over to where they were standing.  (Undisp. Facts ¶ 41.)  Defendant Rosser heard Defendants Hernandez and Holmes talking with Plaintiff, and went to the back of the house.  (Undisp. Facts ¶ 42.)  Plaintiff refused to go over to the fenced edge of the yard where the officers were standing, and stayed within two or three feet of the back door of his house.  (Undisp. Facts ¶ 44.)  Defendants were approximately twenty feet away from Plaintiff while they tried to talk with him.  (Undisp. Facts ¶ 45.)

Plaintiff refused to cooperate with Defendants' verbal commands and requests.  (Hernandez Aff. ¶ 24; Rosser Aff. ¶ 24.)  Plaintiff cursed at Defendants and threatened to turn his dogs loose on them.  (Hernandez Aff. ¶ 25; Rosser Aff. ¶ 23.)  Defendant Holmes told Plaintiff that he would have to shoot the dog if the dogs attacked.  (Undisp. Facts ¶ 48.)  Plaintiff then threatened to shoot Defendants.  (Pl. Dep. 32.)  Plaintiff continued to act belligerently, cursing and yelling at Defendants Holmes and Hernandez.  (Hernandez Aff. ¶ 28.)

Plaintiff moved toward the house and Defendant Hernandez shot Plaintiff in the chest with

a Taser.[2]  (Pl. Dep. 37; Hernandez Aff. ¶¶ 29-32.)  Plaintiff fell to the ground and the leads of the Taser came off his chest.  (Hernandez Aff. ¶ 33.)  Plaintiff got up, ran inside the house, and locked the door.  (Undisp. Facts ¶¶ 53-54; Hernandez Aff. ¶ 34.)  In support of his response, Plaintiff submits that he  was retreating from the officers and he had his arms up in a surrender position when he was shot with the Taser.  (Pl. Dep. 37; 62.)

Sergeant Stevenson arrived at the scene, and tried to re-establish contact with Barreras, who was locked inside of his home.  (Rosser Aff. ¶¶ 29-30; Hernandez Aff. ¶¶ 35-36).  Sergeant Stevenson made contact with Plaintiff by talking to him at a bedroom window.  (Undisp. Facts ¶ 56.)

Plaintiff did not speak with any police officers after he provided information to them on how to get in touch with his wife.  (Undisp. Facts ¶ 60.)  Sergeant Stevenson called Michelle Barreras on her cell phone around 3:00 a.m. in the morning.  (Undisp. Facts ¶ 61.)  The police officers asked her to return to the house, and she did.  (Undisp. Facts ¶ 62.)

Michelle Barreras did not have keys to the house; she tried knocking on the door and calling the house, but Plaintiff would not answer.  (Undisp. Facts ¶ 64.)  Michelle Barreras went to a nearby relative's house to get keys, returned and went inside the residence.  (Undisp. Facts ¶ 65.)

The officers determined there was no reason to attempt to take Plaintiff into custody at that time.  (Hernandez and Rosser Affs.)  On October 29, 2004, Defendant Officer Hernandez prepared a criminal complaint which was filed in the Roswell Municipal Court, charging Plaintiff with obstructing an officer, resisting arrest, eluding or attempting to elude an officer.  (Undisp. Facts ¶ 67; Def. Ex. 2.)  The Roswell Municipal Court issued a warrant for Plaintiff's arrest.  (Undisp. Facts

---

[2] Courts define Tasers as "conducted energy weapons" that use propelled wire to channel energy to a remote target, thereby controlling and overriding the body's central nervous system. *Draper v. Reynolds*, 369 F.3d 1270, 1273 n. 3 (11th Cir. 2004). A Taser can fire two probes up to 21 feet, which are connected to the hand-held Taser  high-voltage, insulated wire. *Id.*  When the probes touch the target, the T transmits electrical pulses along the wires and into the body of the target. *Id.*

¶ 67)  On April 20, 2005, Plaintiff was found not guilty of the charges.  (Pl. Ex. 3.)

## III.    Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)).  The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Id*. (citations omitted).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment.  *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The Court may consider only admissible evidence on summary judgment.  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).

IV.    **Discussion.**

    A.    **The individual defendants are entitled to qualified immunity.**

A government official is entitled to qualified immunity from civil damages under §1983 when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to show (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (citing *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) and *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  If the plaintiff fails to satisfy either portion of this two-pronged test, the Court must grant the defendant qualified immunity. *Verdecia*, 327 F.3d at1174 (citing *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)).

In resolving questions of qualified immunity, courts are required to resolve a ". . . threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If, and only if, the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the inquiry then proceeds to the next step; whether the right was clearly established at the time of the defendant's alleged unlawful conduct. *Id*; *see also Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).  In rebutting a qualified immunity claim at the summary judgment level, a plaintiff "can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)[.]" *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

    1.      **Defendants are entitled to qualified immunity on the illegal search and seizure claim.**

Plaintiff claims the individual Defendants violated his Fourth Amendment right to be free from unlawful searches and seizures.  Upon review, the Court finds no constitutional violation, making qualified immunity appropriate.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. Const. amend. IV.  A search subject to Fourth Amendment protection occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

There is no evidence that Defendants conducted a search of Plaintiff's home or its curtilage. The officers stood in the front yard, on the front porch, and outside the fenced backyard while speaking with Plaintiff.  These areas are not enclosed and are accessible to anyone approaching the home.  Plaintiff's claim alleging an illegal search must fail because there was no search.

A seizure occurs for Fourth Amendment purposes "whenever a police officer accosts an individual and restrains his freedom to walk away."  *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  Relying on *Reeves v. Churchich*, 484 F.3d 1244, 1251 (10th Cir. 2007), Defendants argue that Plaintiff was not seized.  However, Defendants' reliance on *Reeves* is misplaced.

In *Reeves*, law enforcement officers entered a two-story duplex in an effort to apprehend a suspect who was staying in the upstairs apartment.  *Reeves*, 484 F.3d at 1248-49.  During the course of the incident, the law enforcement officers pointed guns at the plaintiffs and issued commands to the plaintiffs, who resided in the downstairs apartment of the duplex.  *Id.*, 484 F.3d at 1249-50.  The officers in the *Reeves* case did not physically touch the plaintiffs, and the *Reeves* plaintiffs refused to submit to the officers' assertions of authority.  *Id.*

After the district court in *Reeves* determined that the officers were entitled to qualified immunity, the Tenth Circuit affirmed, holding that no seizure occurred because the plaintiffs had not been physically touched by police and the plaintiffs failed to submit to the officers' assertions of authority. *Reeves*, 484 F.3d at 1251.

The crucial distinction between the instant case and *Reeves* is the fact that Plaintiff here was shot with a Taser. In reaching the holding in *Reeves*, the Tenth Circuit relied on *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, the Court held there is no seizure if an officer's show of force does not either physically touch the individual or compel him to submit to the officer's authority. *Hodari D.,* 499 U.S. at 626-27; *see also Bella v. Chamberlain*, 24 F.3d 1251, 1255-56 (10th Cir. 1994) (no seizure where officers fired at helicopter but failed to stop plaintiff). This case differs from *Reeves* because, here, Defendant Hernandez shot Plaintiff with a Taser, causing Plaintiff to fall to the ground. Although Plaintiff got up and eluded the officers, Plaintiff was seized within the meaning of the Fourth Amendment when he was shot with the Taser.

The "reasonableness" of a particular seizure depends on the balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests . . . [and] the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

Defendants' actions were reasonable under the circumstances. *See Brigham City, Utah v. Stuart*, 126 S.Ct. 1943, 1947-48 (2006) (warrantless entry of home without consent was a search, but was reasonable under the circumstances). Plaintiff does not dispute that the Roswell Police Department had received reports of a disturbance at Plaintiff's home in that a woman was screaming inside the home. Defendants had information that Plaintiff may have beaten Michele Barreras two years before while Plaintiff was drunk. A few hours earlier, Defendants had encountered Michele

10

Barreras at the home where Plaintiff appeared drunk and belligerent.

When Defendants returned to the home at 3:00 a.m. in response to a call reporting a woman screaming, Defendants had no way of knowing that Michele Barreras had left. Plaintiff was hostile and uncooperative and he refused to provide any information to the officers about whether his wife was inside the home. Plaintiff threatened to turn loose his dogs on Defendants and shoot them.

Where the facts are undisputed, the question of objective reasonableness under the Fourth Amendment presents a legal determination. *Mecham v. Frazier*, ____ F.3d ____, 2007 WL 2608624 *2 (10th Cir. Sept. 11, 2007). This concept was emphasized by the Tenth Circuit in *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001):

> Whether the officers acted reasonably, however, is a legal determination in the absence of disputed material facts. Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts. Because qualified immunity is a question of law to be resolved at the earliest possible stage of litigation, courts often engage in determinations of reasonableness under the Fourth Amendment, necessarily applying the undisputed material facts to the legal standards.

*Medina*, 252 F.3d at 1131.

Construed in the light most favorable to Plaintiff, the facts of record establish that the individual Defendants' actions comported with the requirements of the Fourth Amendment. In light of *Mecham* and *Medina*, the question of qualified immunity should be resolved as a matter of law. *See also Scott*, 127 S.Ct. at 1776-77 (deciding qualified immunity in Fourth Amendment case based on a videotape of incident).

### 2.      Defendants are entitled to qualified immunity on the excessive force claim.

Plaintiff claims Defendant Officer Hernandez subjected him to excessive force in violation of his Fourth Amendment rights by shooting Plaintiff with a Taser.

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held "that all claims that law

enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.* at 395.  In evaluating an excessive force claim, the issue is whether the arresting officers' actions were objectively reasonable.  *See Latta v. Keryte*, 118 F.3d 693, 701 (10th Cir. 1997).  It is well established that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.

The Fourth Amendment excessive force inquiry considers whether the plaintiff was resisting arrest, whether the plaintiff posed an immediate threat and the severity of the crime.  *See Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir. 1996).  To determine whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake.  *See id.*; *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

The reasonableness of the amount of force used must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight.  *See Graham v. Connor*, 490 U.S. at 397.  The reasonableness inquiry is an objective one.  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

Where a suspect repeatedly refuses to comply with an officer's lawful command, courts have found use of a Taser reasonable.  *See, e.g. Draper v. Reynolds*, 369 F.3d at 1278; *Russo v. City of*

12

*Cincinnati*, 953 F.2d 1036, 1044-45 (6th Cir. 1992).

In *Draper*, law enforcement officers stopped the plaintiff's truck for improper illumination of the vehicle's license plate light. *Draper,* 369 F.3d at 1272. The plaintiff immediately became belligerent with the officers, denied that he had done anything wrong, and ignored the officers' requests for documentation. *Id.*, 369 F.3d at 1272-73. After the plaintiff ignored the officers' multiple requests for documentation, one of the officers shot the plaintiff with a Taser. *Id.*, 369 F.3d at 1273. The plaintiff sued the officers, alleging the officers used excessive force in violation of federal and state law. *Id.*, 369 F.3d at 1274.

The Eleventh Circuit concluded that the officer's use of the Taser to effectuate the plaintiff's arrest was reasonable under the circumstances. *Id.*, 369 F.3d at 1274. The court found the following circumstances relevant in its evaluation of the plaintiff's claim:

> Draper was hostile, belligerent, and uncooperative. No less than five times, [the officer] asked Draper to retrieve documents from the truck cab, and each time Draper refused to comply. Rather, Draper accused [the officer] of harassing him and blinding him with the flashlight. Draper used profanity, moved around and paced in agitation, and repeatedly yelled at [the officer].

*Id.*, 369 F.3d at 1274.

Plaintiff conduct in the instant case mirrors the conduct in *Draper*. However, in the instant case, Defendants had cause for concern for the safety of Michelle Barreras as well as their own safety. Thus, *Draper* strongly supports the conclusion that Defendants are entitled to qualified immunity on Plaintiff's excessive force claim.

In *Russo*, the Sixth Circuit held that an officer was entitled to qualified immunity despite using a Taser multiple times on a knife-wielding suspect who was laying at the bottom of a stairwell and no longer an immediate threat. *Russo*, 953 F.2d at 1045. The court noted that the officer's "actions were intended to avoid having to resort to lethal force." *Russo*, 953 F.2d at 1044-45.

13

Plaintiff's presented a more immediate threat to Defendants because he threatened to shoot them and then headed inside his house, where he might have retrieved a gun.

Plaintiff points out that he was in his backyard when he was shot with the Taser and did not appear to be armed.  Plaintiff also finds it significant that he was retreating from the officers and he had his arms up in a surrender position when he was shot with the Taser.  Plaintiff also points out that he was twenty feet away from the officers, behind a locked gate, and on the phone with the Roswell Police Department when he was hit with the Taser.  (Pl. Dep. at 27; 38.)

Notably, these factors do not diminish the circumstances that justified the use of the Taser. Just prior to heading towards his back door, Plaintiff threatened to shoot Defendants. A reasonable officer would believe that Plaintiff was going to get a gun out of his house.  The dangerousness of the situation was underscored by the fact that Defendants knew that Plaintiff had a history of beating his wife after he had been drinking.  Combined with the report that a woman was heard screaming inside the house, a reasonable officer would surmise that the wife might be inside and in danger. Under these circumstances, the use of the Taser to attempt to subdue Plaintiff was reasonable.

In response to Defendants' assertion of qualified immunity, Plaintiff had the burden to show Defendants violated a constitutional or statutory right.  *Verdecia v. Adams*, 327 F.3d at 1174.  The facts relied upon by Plaintiff do not negate the salient facts that Plaintiff was drunk, belligerent, failed to cooperate with police, and appeared to present a threat to the officers and a person inside the house. Defendants' conduct was reasonable under these circumstances.  Taken in the light most favorable to Plaintiff, the facts of record do not show Defendants' conduct violated a constitutional or statutory right.  Defendants are entitled to qualified immunity on the excessive force claim.

### 3. The subsequent arrest of Plaintiff pursuant to a warrant did not violate any Constitutional right.

Defendant Hernandez prepared a criminal complaint stating in pertinent part:

> During an investigation of a domestic disturbance [Plaintiff] refused to comply with orders given by Officers Mark Rosser and myself, Pete Hernandez. Subject slammed the door on officers and began cursing and yelling through the door. Subject then went to the backyard and began yelling and cursing. Subject was then contacted by Officer Brian Holmes. Subject refused to comply with Officer Holmes' orders to step from behind the gate. Subject again cursed and yelled at officers while on the telephone. I then ordered subject to put the phone down. Subject refused and began to back into the residence. I then deployed my taser, causing subject to fall down. As subject fell down, the leads to the Taser came off. Subject then got up from the ground and ran back into the house, locking all doors. . . .

(Pl. Ex. 2.)

The criminal complaint charged Plaintiff with obstructing an officer, resisting arrest, and eluding an officer under Sections 10-48; 10-49; and 10-50 of the Roswell Municipal Code. These sections provide, in pertinent part, as follows:

**Section 10-48. Obstructing an officer.**

(a) Obstructing an officer consists of:

1) Knowingly obstructing, resisting or opposing any officer of this state or any duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ of process . . . .

(b) It is unlawful to resist or obstruct an officer.

**Section 10-49. Eluding or attempting to elude an officer.**

(a) Eluding or attempting to elude an officer consists of:

1) Intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him. . . .

(b) It is unlawful to elude or attempt to elude an officer.

15

**Section 10-50. Resting arrest.**

It is unlawful to resist arrest.

Roswell Municipal Code §§ 10-48, 10-49 and 10-50.

Based on the criminal complaint, the Roswell Municipal Court issued a warrant for the arrest of Plaintiff. Subsequently, Plaintiff was arrested pursuant to that warrant.

The Fourth Amendment is not violated if an individual is arrested pursuant to a warrant issued upon probable cause. *See Brady v. Dill*, 187 F.3d 104, 112 (10th Cir. 1999) (officer's obligation is to execute an arrest warrant issued by an appropriate court). Notably, the facts alleged in the criminal complaint established probable cause for the arrest of Plaintiff. These facts underscore that the warrant issued upon probable cause. Plaintiff was arrested pursuant to a warrant issued upon probable cause. Simply put, Plaintiff has failed to meet his burden to show that Defendant violated a constitutional or statutory right. *See Verdecia v. Adams*, 327 F.3d at 1174. Taken in the light most favorable to Plaintiff, the facts of record do not show Defendants' conduct violated a constitutional or statutory right. Defendants are entitled to qualified immunity on Plaintiff's constitutional claims.

**B.      No municipal liability.**

The Supreme Court has held "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).

In order to sustain a constitutional claim against the City of Roswell, Plaintiff must show both that "a constitutional violation occurred, and that some municipal policy was the moving force behind the violation." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir.

16

2000).  For municipal liability to attach, there must first be an underlying violation of plaintiff's constitutional rights by a municipal employee.  *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154-55 (10th Cir. 2001).

In this case, no constitutional violation was committed by the defendant officers.  Municipal liability cannot attach because there was no underlying constitutional violation by the individual defendants.  For this reason, the City is entitled to summary judgment on the §1983 claims.

**C.      Defendants are entitled to dismissal of, or summary judgment on, the state-law claims.**

In addition to his §1983 claims, Plaintiff alleges state-law claims for assault, battery, malicious abuse of process, trespass, intentional infliction of emotional distress, and negligence. Defendants moved for summary judgment on all claims.  Plaintiff did not respond to Defendants' arguments concerning the state-law claims.

**1.      Assault and battery.**

Plaintiff alleges Defendants assaulted and battered him during the events of October 25, 2004.  The determination that Defendants did not use excessive force in seizing him precludes the assault and battery claim.  *State v. Hill*, 34 P.3d 139, 245 (N.M. App. 2001); *Wilson v. Meeks*, 98 F.3d at 1253.   Plaintiff has not established that Defendants' attempt to arrest Plaintiff was unreasonable.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims for assault and battery.

**2.      Malicious abuse of process.**

In order to prevail on a claim for malicious abuse of process, Plaintiff must prove: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3)

a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 35 (N.M. 2007). The second element (herein "misuse of process element") can be shown in one of two ways: (1) filing a complaint without probable cause, or (2) an "irregularity or impropriety suggesting extortion, delay, or harassment." *Id*.

The evidence of record, taken in the light most favorable to Plaintiff, establishes neither the misuse of process element, nor the third element of the tort of malicious abuse of process.

Probable cause in the malicious abuse of process context is defined as a "reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury. The lack of probable cause must be manifest." *Fleetwood Retail Corp.*, 164 P.3d at 35. Notably, prior favorable termination of the underlying case is not an element of the malicious abuse of process tort, as it was for the former tort of malicious prosecution. *Id*.

Defendant Hernandez charged Plaintiff with obstructing an officer, resisting arrest, and eluding an officer under Sections 10-48; 10-49; and 10-50 of the Roswell Municipal Code. Taken in the light most favorable to Plaintiff, the undisputed facts demonstrate it was reasonable for Defendant Hernandez to conclude that there was probable cause to believe that Plaintiff obstructed, opposed and eluded the officers and resisted arrest at the time Defendant Hernandez filed the criminal complaint.

Defendant Hernandez has established facts supporting a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the charges could have been established to the satisfaction of a court or jury. Plaintiff has presented no material facts that refute this showing. The fact that Plaintiff was ultimately found not guilty of the charges does not negate

18

Case 2:06-cv-01008-RB-LAM   Document 38   Filed 10/26/07   Page 19 of 20

Defendants' showing of probable cause for filing the criminal complaint. *See Fleetwood Retail Corp.*, 164 P.3d at 35. Viewed in the light most favorable to Plaintiff, the evidence of record does not establish that the complaint was filed without probable cause, as required by the first alternative to the misuse of process element.

The second alternative showing for the misuse of process element is similarly unsatisfied. Viewed in the light most favorable to Plaintiff, the record contains no evidence indicative of irregularity or impropriety suggesting extortion, delay, or harassment in connection with the charges. Moreover, the third element of malicious abuse of process is unmet; namely, the record contains no evidence that Defendant Hernandez's primary motive in misusing the process was to accomplish an illegitimate end. Under these circumstances, Defendants are entitled to summary judgment on Plaintiff's claim of malicious abuse of process.

### 3.       Trespass and intentional infliction of emotional distress.

The New Mexico Tort Claims Act grants governmental employees and entities immunity from liability except for actions which specifically are enumerated as an exception within the Act. *See* N.M. Stat. Ann. § 41-4-4(A). Section 41-4-12 of the Act waives immunity for specific intentional torts and violation of statutory law committed by law enforcement officers. Plaintiff's claims for trespass and intentional infliction of emotional distress must be dismissed because the immunity granted by the New Mexico Tort Claims Act has not been waived in Section 41-4-12. *Townsend v. State*, 871 P.2d 958, 960 (N.M. 1994) (immunity is not waived for the tort of trespass); *Garcia-Montoya v. State Treasurer's Office*, 16 P.3d 1084, 1102 (N.M. 2001) (no waiver of immunity for intentional infliction of emotional distress). Defendants are entitled to summary judgment on Plaintiff's claims for trespass and intentional infliction of emotional distress.

4.     **Negligence**.

New Mexico law permits a plaintiff to pursue a negligence claim against a police officer where the officer's negligence has resulted in a third party committing one of the intentional torts which are specifically enumerated in Section 41-4-12 of the New Mexico Tort Claims Act, but simple negligence in the performance of a law enforcement officer's duty does not amount to commission of one of the enumerated torts. *Bober v. N.M. State Fair*, 808 P.2d 614, 624 (N.M. 1991).  Simply put, immunity has not been waived under the New Mexico Tort Claims Act for negligence claims against Defendants.  Under these circumstances, summary judgment in favor of Defendants is appropriate.

5.     **Vicarious liability.**

New Mexico law defines vicarious liability as "indirect legal responsibility."  *Kinetics, Inc. v. El Paso Prods. Co.*, 653 P.2d 522, 527 (N.M. App. 1982).  In this case, no direct legal responsibility exists because Defendants are entitled to dismissal of all the state law claims asserted against the individual officers.  Accordingly, the City is entitled to summary judgment on all claims brought against it by Plaintiff.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 30), filed on July 9, 2007, is **GRANTED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

20